IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                           :

VICTOR LOPEZ MENDEZ                              :        CASE NO. 05-06196 (ESL)
MARIA DEL C. PORTELA ROMAN                       :

                                                 :        CHAPTER 7
        Debtor                                   :

_____        :

OPINION AND ORDER

This case is before the court upon Special Counsel Jorge R. De Jesus Diaz's *Application for Compensation* (Docket No. 167) in the amount of $33,141.69 for the legal services he rendered representing the bankruptcy estate in the case of <u>Lopez Mendez</u>, *et al.* v. Commonweatlh of Puerto Rico, before the Court of First Instance of Puerto Rico, San Juan Superior Court (the "PR Court of First Instance"), Case No. K DC2003-1248 (503), subsequently appealed before the Puerto Rico Court of Appeals ("PR Court of Appeals"), Appeal No. KLAN200700494 (the "State Court Case"), and the United States Trustee's *Objection* and *Motion for Summary Judgment* in opposition thereto (Docket Nos. 174 & 215).  For the reasons stated below, the United States Trustee's *Objection* and *Motion for Summary Judgment* are hereby granted.

Procedural Background

On August 4, 2003, attorney Jorge R. De Jesus Diaz ("Attorney De Jesus") filed a *Complaint* on the Debtors' behalf (and their two sons) in the State Court Case for damages against the Commonwealth of Puerto Rico in Case No. K DC2003-1248 (503).  <u>See</u> Docket No. 230, p. 1.

On July 5, 2005, the Debtors filed a voluntary bankruptcy petition under Chapter 13 along with its corresponding schedules (Docket No. 1).  They did not disclose their State Court Case in Schedule B (Docket No. 1, pp. 7-9).  On October 23, 2006, the Debtors filed a *Notice of Conversion* to a Chapter 7 (Docket No. 61) and on November 6, 2006, Wilfredo Segarra Miranda was appointed as the Chapter 7 Trustee (the "Chapter 7 Trustee", Docket No. 68).

On November 30, 2006, the PR Court of First Instance entered a *Judgment* (the "*Judgment*") in favor of the Debtors in the State Court Case, awarding them and their two sons the following amounts: (a) $90,000.00 to the Debtors; (b) $20,000.00 to their son Carlos Juan López Portela; and (c) $20,000.00 to their minor son Jonathan López Portela.  The Commonwealth of Puerto Rico

appealed the *Judgment* before the PR Court of Appeals. On May 21, 2008, the appellate court affirmed the PR Court of First Instance. See Docket No. 150-2, p. 2.

On January 24, 2007, the Debtors filed a *Motion Submitting Amended Schedules B and C and Statement of Financial Affairs* (Docket No. 85) to amend Schedule B (to disclose the *Judgment* awarded to them in the State Court Case), and Schedule C (to claim the applicable exemptions over certain properties and update the claimed exemptions over certain equipment to its current value).

On April 4, 2007, the Trustee filed an *Application to Employ* Attorney De Jesus as Special Counsel to represent the bankruptcy estate in the State Court Case (Docket No. 89). Attached to the *Application to Employ* was a *Verified Declaration under Penalty of Perjury* signed by Attorney De Jesus on March 19, 2007 in which he agreed to serve as a special counsel for the bankruptcy estate in the State Court Case under 11 U.S.C. § 327(a) and that his attorney's fees were 33% of the amount recovered plus expenses (Docket No. 89, pp. 3-4, ¶¶ 3, 4 & 6). On April 9, 2007, the court approved the *Application to Employ* (Docket No. 90).

On November 17, 2008, the Commonwealth of Puerto Rico consigned at the PR Court of First Instance the amount of $142,269.86 in total payment of the *Judgment* plus interest accrued (Docket No. 150-2, p. 2). On December 5, 2008, Attorney De Jesus filed before the PR Court of First Instance an *Informative Motion and Petition for Withdrawal of Consigned Funds* (the "*Funds Withdrawal Motion*", Docket No. 222-1, pp. 1-2) requesting an order for the PR Court of First Instance's Accounts Division to issue a check in favor of the Debtors, their two sons Carlos Juan and Jonathan, both Lopez Portela, and himself in the amount of $142,269.86.

On December 16, 2008, Attorney De Jesus personally picked up check no. 25387 issued by the Accounts Division of the PR Court of First Instance in the amount of $142,269.86 (the "*Judgment Check*", Docket No. 187-1, pp. 1-2) and on December 24, 2008, he endorsed it (Docket No. 195, p. 2, ¶ 11). Also see Docket No. 150-2, p. 2. Attorney De Jesus did not notify the Chapter 7 Trustee that he had filed the *Funds Withdrawal Motion* or that he had picked up the *Judgment Check* from the PR Court of First Instance. See Docket No. 150-2, p. 2.

Upon becoming aware of these facts, on January 24, 2011 the Chapter 7 Trustee filed a *Motion Requesting Order to Show Cause* (Docket No. 129) to have Attorney De Jesus explain why

2

the funds of the bankruptcy estate and the product of the *Judgment Check* were delivered to him and not to the Chapter 7 Trustee, why sanctions should not be imposed against him, including the reimbursement of the bankruptcy estate's funds, and why the matter should not be referred to the Office of the US Attorney or the US District Court for investigation of possible fraud and conspiracy to commit fraud against the bankruptcy estate.

On February 24, 2011, Attorney De Jesus filed a *Reaction to Trustee's Motion Requesting Order to Show Cause* (Docket No. 134) acknowledging his indiscretion but denying any intention to commit fraud against the bankruptcy estate. Attorney De Jesus affirms instead that delivering the funds of the *Judgment Check* to the Debtors was an excusable error.

On June 9, 2011, the Chapter 7 Trustee and Attorney De Jesus reached a *Settlement Agreement* (Docket No. 150-2), which was filed on the same date with a *Motion Requesting Approval of Compromise with Attorney Jorge R. De Jesus Diaz* (Docket No. 150). In essence, Attorney De Jesus acknowledged that he "failed to notify the [Chapter 7] Trustee about the payment of the [*Judgment Check*] and of the withdrawal of the funds" (Docket No. 150-2, p. 2). To avoid the expenses of litigating the controversy, the Chapter 7 Trustee and Attorney De Jesus agreed that the latter would pay the bankruptcy estate in 60 days the amount of $67,287.69 –two thirds of the net proceeds to the bankruptcy estate from the *Judgment Check*– in exchange for mutual releases between them (Docket No. 150-2, p. 3, ¶ 1(a)). After such payment, Attorney De Jesus was to file an application for compensation to request the amount of $33,141.69 for his attorney's fees in the *Complaint* filed before the PR Court of First Instance. The Chapter 7 Trustee would not oppose it, though he advised Attorney De Jesus that the court could deny or modify it at its discretion (Docket No. 150-2, p. 3, ¶ 1(b)). Attorney De Jesus was also advised that the *Settlement Agreement* with the Chapter 7 Trustee "in no way prevents the office of the US Trustee from doing so" (Docket No. 150-2, p. 4, ¶ 1(c)). On June 17, 2011, the court approved the *Settlement Agreement* (Docket No. 154).

On August 2, 2011, Attorney De Jesus filed an *Application for Compensation* in the amount of $33,141.69 for his services as Special Counsel for the bankruptcy estate in the *Complaint* filed against the Commonwealth of Puerto Rico before the PR Court of First Instance (the "*Application for Compensation*", Docket No. 167).

3

On August 17, 2011, the Chapter 7 Trustee filed a *Request for Specific Performance as to Stipulation* (Docket No. 170) alleging that contrary to the provisions of the *Settlement Agreement* (Docket No. 150), Attorney De Jesus filed the *Application for Compensation* without having paid the agreed amount of $67,287.69. Thus, the Chapter 7 Trustee sought an order directing Attorney De Jesus to make that payment and hold in abeyance the *Application for Compensation* in the meantime.

On August 25, 2011, the United States Trustee's for Region 21 (the "US Trustee") filed an *Objection to De Jesus' Application for Compensation* (the "*Objection*", Docket No. 174) claiming that Attorney De Jesus had challenged the Bankruptcy System by not complying with the *Settlement Agreement* and that he had insurmountable adverse interests against the bankruptcy estate, which made him unworthy of any compensation at all. The US Trustee thus requests that the court denies Attorney De Jesus' *Application for Compensation*.

On August 28, 2011, the court issued an *Order and Notice* (Docket No. 175) scheduling a hearing for September 11, 2011 to consider Attorney De Jesus' *Application for Compensation* (Docket No. 167) and the US Trustee's *Objection* thereto (Docket No. 174) On August 30, 2011, the Chapter 7 Trustee filed a *Motion Requesting [to] Hold in Abeyance* (Docket No. 180) Attorney De Jesus' *Application for Compensation* (Docket No. 167) and the hearing to consider it until he complied with the $67,287.29 payment pursuant to the *Settlement Agreement* (Docket No. 150). On September 12, 2011, the US Trustee filed a *Motion to Submit Documentation and Proffer* (Docket No. 187) attaching the *Judgment Check* with its endorsements. On September 13, 2011, the court held a status conference during which Attorney De Jesus tendered money orders in the amount of $47,000 ($15,000, $20,000 and $12,000) to the Chapter 7 Trustee as partial payment of the amount agreed in the *Settlement Agreement*. The parties further stipulated that the remaining balance of $20,287.69 would be paid on or before October 26, 2011. Attorney De Jesus was granted 14 days to reply to the US Trustee's *Objection* to his *Application for Compensation* and the hearing was rescheduled for November 18, 2011. See Docket No. 188 (*Minute Entry*).

On October 7, 2011, Attorney De Jesus filed his *Reply* to the US Trustee's *Objection* (Docket No. 195) admitting once more that he had failed to notify the Chapter 7 Trustee of the *Judgment* he obtained –and subsequently defended before the PR Court of Appeals– and that he withdrew the

funds from the *Judgment Check* consigned at the PR Court of First Instance. He further claims that he has "shown ignorance", avers "bankruptcy process inexperience" and "shamefully acknowlede[s] ... that he failed in his reporting duties as Special Counsel for the Chapter 7 Trustee" (Docket No. 195, p. 5). Notwithstanding, he contends that for his mistake he is paying the amount of $67,287.69 to the bankruptcy estate as per the *Settlement Agreement*, that he does not have an adverse interest to the estate in regards to the matter for which he was retained as special counsel, and that he successfully achieved the *Judgment* he was entrusted to obtain. He therefore insists that he should be compensated for his five (5) years of work in obtaining and defending the *Judgment*.

On October 23, 2011, Attorney De Jesus filed a *Motion Re Full Settlement Payment to the Trustee* (Docket No. 196) informing that on October 19, 2011, he personally delivered to the Chapter 7 Trustee the remaining balance of $20,287.69, thus complying with the *Settlement Agreement.*

Upon the request of Attorney De Jesus, on December 15, 2011 (Docket No. 208) this court entered an *Order and Notice* scheduling a settlement conference for February 17, 2012, which was subsequently rescheduled for March 9, 2012 (Docket No. 212).

On December 23, 2011, the US Trustee filed a *Motion for Summary Judgment* (Docket No. 215) requesting the court to deny Attorney De Jesus' *Application of Compensation*. The US Trustee argues that Attorney De Jesus' post-employment actions against his own client, the bankruptcy estate administered by the Chapter 7 Trustee, bar him from collecting any compensation whatsoever in these proceedings. The US Trustee claims that upon the approval of his employment, Attorney De Jesus' clients were the Chapter 7 Trustee and the bankruptcy estate. Consequently, the US Trustee argues that his employment had to benefit the estate and his main responsibility was to the Court, the Chapter 7 Trustee and the creditors, not to the Debtors or himself. The US Trustee also contends that Attorney De Jesus failed to comply with his duties as a special counsel for the estate under 11 U.S.C. §§ 542, 543 and that he breached his fiduciary duty as an attorney to the estate.

On March 9, 2012, this court held a settlement conference where the US Trustee informed that there is no agreement reached in regards to the US Trustee's *Motion for Summary Judgment*. After arguing their respective positions, Attorney De Jesus was granted twenty-one (21) days to submit a written reply to the *Motion for Summary Judgment*, and the US Trustee was granted twenty-

one (21) days to sur-reply (Docket No. 227).

On March 29, 2012, Attorney De Jesus filed his *Response to [the] United States Trustee's Motion for Summary Judgment* (Docket No. 230) acknowledging that "the essential facts in this case are not in controversy" but sustaining that his actions should be vindicated due to his lack of scienter and because he has never practiced bankruptcy law and is thus not conversant with the Bankruptcy Code. Attorney De Jesus also avers that under Section 328(c) of the Bankruptcy Code, the court is not compelled to deny the allowance of compensation for services rendered by a special counsel employed by the Chapter 7 Trustee, although it may do so at its discretion. He also invokes the Bankruptcy Court's equitable powers to grant his *Application for Compensation*.

On April 4, 2012, the US Trustee filed a *Reply to De Jesus' Response to Motion for Summary Judgment* (Docket No. 231) insisting upon the denial of the *Application for Compensation* and claiming that contrary to Attorney De Jesus' contentions, the Chapter 7 Trustee explained to him his obligations and responsibilities to inform about the developments of the state court case and that his fees were subject to the Court's approval (Docket No. 233-1).

Material Uncontested Facts

1. Attorney de Jesus was admitted to the Puerto Rico Bar on September 1, 1990 (Docket No. 215, Exhibit 1, p. 3). He is not admitted to practice in federal courts (Docket No. 230-3, p. 1, ¶¶ 1 & 3).

2. On March 19, 2007, Attorney De Jesus signed a *Verified Declaration Under Penalty of Perjury* in which he agreed "to serve as a special counsel ... to represent the [bankruptcy] estate" in the State Court Case "pursuant to 11 U.S.C. § 327(a)". His attorney's fees were set at "33% of the amount recovered plus expenses". Docket No. 89, pp. 3-4, ¶¶ 4 & 6.

3. Attorney De Jesus did not inform the Chapter 7 Trustee that on December 5, 2008 he filed the *Funds Withdrawal Motion* (Docket No. 222-1, p. 1-2) requesting an order for the PR Court of First Instance's Accounts Division to issue a check in favor of the Debtors, their sons Carlos Juan and Jonathan Lopez Portela, and himself in the amount of $142,269.86.

4. On December 16, 2008, Attorney De Jesus personally picked up the *Judgment Check* issued by the Accounts Division at the PR Court of First Instance (Docket No. 150-2, p. 2). He did

6

not inform such action to the Chapter 7 Trustee. On December 24, 2008, Attorney de Jesus endorsed the *Judgment Check* and subsequently gave it to the Debtors without notifying the Chapter 7 Trustee. (Docket Nos. 195, p. 2, ¶ 11, and 134, p. 4).

5. Between February 23, 2009 and November 4, 2010, the Chapter 7 Trustee issued letters to Attorney De Jesus inquiring about the status of the State Court Case. See Docket No. 129, p. 2, ¶ 5, and Docket No. 134, p. 3.

6. On June 9, 2011, Attorney De Jesus acknowledged that he "failed to notify the [Chapter 7] Trustee about the payment of the [*Judgment Check*] and of the withdrawal of the funds" (Docket No. 150-2, p. 2).

7. Attorney De Jesus has not received any compensation from the Debtors for his services in the State Court Case (Docket No. 230-3, p. 2, ¶ 6).

Applicable Law & Discussion

*(A)    Standard for Summary Judgment*

Fed. R. Bankr. P. 9014(c) expressly makes Fed. R. Bankr. P. 7056 applicable to contested matters such as Attorney De Jesus' *Application for Compensation* (Docket No. 167). Fed. R. Bankr. P. 7056 in turn makes Fed. R. Civ. P. 56 applicable to bankruptcy proceedings.

Fed. R. Civ. P. 56 provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary judgment procedure authorized by [Fed. R. Civ. P. 56] is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure: 3d § 2712, p. 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence

of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Also see López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. Also see Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). Also see Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions

and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. Lopez, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court is required to view the pleadings in their entirety when passing a request for summary judgment. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 at 368. To do so, it may consider affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether or not any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. Id. § 2721 at 365-366. For purposes of Fed. R. Civ. P. 56, stipulations will be considered as admissions and "as facts in the case without resort to further evidence". Id. § 2724 at 399-400. Also see Demelle v. ICC, 219 F.2d 619, 621 (1st Cir. 1955), cert. denied 76 S.Ct. 52, 350 U.S. 824 (parties stipulated that there was no genuine issue as to any material fact and that the sole issue before the court was the interpretation of the ICC's order); Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez, 130 S. Ct. 2971, 2983 (2010) (factual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. "Thus, a judicial admission is conclusive in the case.")

In the instant case, Attorney De Jesus acknowledged that there is no dispute as to the material facts established in the US Trustee's *Motion for Summary Judgment*. See Docket Nos. 226 & 230. Therefore, summary judgment is warranted.

*(B)     Property of the bankruptcy estate*

Section 541 of the Bankruptcy Code creates the bankruptcy estate immediately after a debtor files for bankruptcy. Thereafter, the bankruptcy estate is administered by a trustee, who is obligated to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C.

9

§ 704. Section 542 provides the mechanism to turnover property of the estate to the trustee or debtor in possession wherever located. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 542.01 (16th ed. 2012). It was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1978 to expand the trustee's power to "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced". Braunstein v. McCabe, 571 F.3d 108, 116 (1st Cir. 2009), citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205, 207-08 (1983).

In the instant case, all of the Debtors' interest in the State Court Case became part of the bankruptcy estate upon their filing for bankruptcy. See 11 U.S.C. § 541(a)(1). Attorney De Jesus was fully aware of this when he signed the *Verified Declaration Under Penalty of Perjury* on March 19, 2007, which was attached to the *Application to Employ* filed on April 4, 2007 (Docket No. 89). Attorney De Jesus knew of his duty to the Chapter 7 Trustee, as representative of the estate, because in the *Verified Declaration* he expressly acknowledged that the reason he was signing it was "to represent the [bankruptcy] estate ... with respect to the matter on which [he was] to be employed [referring to the State Court Case] pursuant to 11 U.S.C. § 327(a)" (Docket No. 89, pp. 3-4, ¶¶ 4 & 6).

*(C)     Applications for Compensation under the Bankruptcy Code*

Section 327 of the Bankruptcy Code allows for the employment of attorneys and other professionals to represent or assist trustees in carrying out their duties in bankruptcy estates. To ensure that all appointed professionals tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities, qualification for appointment is limited to disinterested persons who do not possess or represent interests adverse to the estate. See 11 U.S.C. § 327(a); Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994); In re Martin, 817 F.2d 175, 179 (1st Cir. 1987). "The purpose of the disinterestedness requirement is to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration." Butler v. Indiano (In re Ponce Marine Farm, Inc., 259 B.R. 484, 490 (D.P.R. 2001), quoting In re Martin, 817 F.2d at 181, and In re Codesco, Inc., 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982). Also see In re Matter of Consolidated Bancshares, Inc.,785 F.2d 1249, 1256 (5th Cir. 1986) ("standards for the employment

of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process").

Section 328 of the Bankruptcy Code provides that the bankruptcy court may deny the allowance of compensation if, at any time during such employment, the professional (a) is not disinterested or (b) holds an interest adverse to the interest of the estate. A "disinterested person" is defined in Section 101(14) of the Bankruptcy Code as one who is "not a creditor, an equity shareholder, or an insider" who at the time of the bankruptcy petition or within two years before bankruptcy is "a director, officer, or employee of the debtor," and does not have "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders" for "any reason." 11 U.S.C. § 101(14). Courts determining whether or not a professional is "disinterested" have "required that professionals be free of any scintilla of personal interest which might impact upon the professional's decisions in estate matters". Pagan v. Lopez-Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 646 (B.A.P. 1st Cir. 1999) aff'd at 230 F.3d 1347 (1st Cir. 2000) (citations omitted). The phrase "interest materially adverse to the estate", on the other hand, is not defined in the Bankruptcy Code, but has been interpreted to mean as follows:

> Holding or representing an interest adverse to the estate as possessing, or serving as an attorney for a person possessing, either an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant ... or ... a predisposition under the circumstances that render such a bias against the estate. In re Prince, 40 F.3d 356, 361 (11th Cir. 1994) (citations omitted).

Also see White v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. (In re CK Liquidation Corp.), 408 B.R. 1, 7 (B.A.P. 1st Cir. 2009) (interpreting the phrase "interest materially adverse to the estate" to mean "the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real"). In determining whether the requirements of disinterestedness and absence of a materially adverse interest have been met, the Court of Appeals for the First Circuit (the "First Circuit") examines whether the targeted interest creates a "meaningful incentive to act contrary to the best interests of the estate and its sundry creditors –an incentive sufficient to place those parties

11

at more than acceptable risk– or the reasonable perception of one." In re Martin, 817 F.2d at 180. "The test is neither subjective, nor significantly influenced by the court-appointed professional's protestations of good faith but contemplates an objective screening for even the appearance of impropriety." Rome v. Braunstein, 19 F.3d at 58 (citations omitted).

"An attorney for a bankruptcy trustee has a fiduciary obligation to the trustee and the estate, **must be totally loyal to the trustee and the estate**, and must refrain from any adverse interest. The attorney must look to all sources of recovery available to the estate and avoid any interest adverse to the estate which would render that search impossible." In re El San Juan Hotel Corp., 239 B.R. at 646 (emphasis added). Bankruptcy courts possess wide discretion in determining whether a conflict of interest exists. In re Martin, 817 F.2d at 182. Upon perception of a materially adverse interest, the bankruptcy court has at its disposal "an armamentarium of permissible remedies, including (but by no means limited to) disqualification, disallowance of all or some fees, and invalidation of the security interest." In re CK Liquidation Corp., 408 B.R. at 8, citing Drew v. Latimer, Biaggi, Rachid & Godreau (In re El Comandante Mgmt. Co., LLC), 395 B.R. 807, 817 (D.P.R. 2008); In re Martin, 817 F.2d at 182-83. The fundamental reason for denying an application for compensation of an attorney who comes into conflict with the bankruptcy estate is that while he/she remains in such conflict, he/she is not an officer of the estate. See In re EWC, Inc., 138 B.R. 276, 281 (Bankr. W.D.Oh. 1992). The Supreme Court has held that the only way to assure that professionals maintain the requisite standards of fiduciary conduct is to strictly enforce compliance with the conflict of interest rules by denial of compensation. See Woods v. City National Bank & Trust Co., 312 U.S. 262, 269 (1941)[1]. The Supreme Court also held that strict enforcement of the conflict of interest rules deter violations of fiduciary duties by persons employed for the estate. Id. at 268. The mere presence of a conflict, even if no resulting harm had befallen the estate, can justify denial of compensation. Id. at 268.

---

[1] As expressed in In re DeSoto, 2010 WL 5093339 at *5 (Bankr. D.N.J. 2010), the basic principles set forth in Woods v. City National Bank & Trust Co., 312 U.S. 262, have remained largely unchanged for nearly seven decades.

*(D)      Ethical considerations under Puerto Rico's Code of Professional Ethics*

To determine whether or not Attorney De Jesus has a conflict with the bankruptcy estate that bars him from being compensated, the court will first consider if he violated his fiduciary duties. See In re Star Broadcasting, Inc., 81 B.R. 835, 839-40 (Bankr. D. N.J. 1988) (concluding that the court must consult the Rules of Conduct to determine if the attorney's representation of a party constitutes a conflict of interest); Robert J. Landry, III and James R. Higdon, Ethical Considerations in Appointment and Compensation of an Attorney for a Chapter 11 Debtor in Possession, 66 Miss. L.J. 355, 401 (1996); In re Marine Power & Equipment Co., 67 B.R. 643, 647-654 (Bankr. W.D.Wa. 1986) (the court denied the attorney's application for compensation based on his conflict of interest in light of the Washington State Rules of Professional Conduct); In re Cypresswood Land Partners, 410 B.R. 247, 256 (Bankr. S.D.Tx. 2009) (violation of Texas Disciplinary Rules of Professional Conduct warrants denial in its entirety of an attorney's application for compensation).

Attorneys admitted to practice law in Puerto Rico, as is Attorney De Jesus, are bound by the minimal standards provided in Puerto Rico's Code of Professional Ethics, 4 L.P.R.A. Ap. IX. See In re Gonzalez-Cardona, 179 D.P.R. 548, 562 (2010) (Puerto Rico's Code of Professional Ethics provide only the minimal standards to which attorneys in Puerto Rico must abide to in performing their profession.) Thus, the Court will analyze if Attorney De Jesus breached his fiduciary duties with his client –the bankruptcy estate– in light of Puerto Rico's Code of Professional Ethics.

In its pertinent part, Canon 19 of the Puerto Rico Code of Professional Ethics, 4 L.P.R.A. Ap. IX C. 19, provides as follows:

**Information to the client**.

The lawyer should always keep his client informed **about every important issue which arises in the development of the case** which has been entrusted to him. (Emphasis added.)

Pursuant to Canon 19, attorneys must keep their clients informed of the endeavors they undertake in a case, especially consulting them in areas that are not "discretional to the attorney". In re Pietri-Castellon, 2012 T.S.P.R. 101 at *13, citing In re Acosta Grubb, 19 P.R. Off. Trans. 635, 643-644, 119 D.P.R. 595, 603 (1987). In the instant case, Attorney De Jesus acknowledged that he did not inform his client that: (1) he had filed the *Funds Withdrawal Motion* at the PR Court of First Instance; (2)

13

that he requested to have the *Judgment Check* made out to the Debtors **and himself**; (3) that he personally picked up the *Judgment Check* on December 16, 2008; and (4) that he endorsed it. Those decisions were not discretional for Attorney De Jesus to make on his own without the knowledge and consent of his client, the bankruptcy estate through the Chapter 7 Trustee.

In addition, Canon 23 of Puerto Rico's Professional Ethics Code, 4 L.P.R.A. Ap. IX C. 23, mandates as follows:

> **Acquiring interest in litigation and dealing with trust property**.
>
> The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting.
>
> A lawyer should not advance or promise financial aid to his client for medical expenses or sustenance, except that he may advance [the payment] of the costs in the litigation, and the expenses of the necessary investigation and medical examinations to represent properly the case of his client.
>
> The fiduciary nature of the relations between client and lawyer demands that they be grounded in absolute honesty. **Particularly, the money of the client or other trust property coming to the possession of the lawyer should be reported promptly and should not be commingled or permitted to be commingled with his private property.** (Emphasis added.)

"Canon 23 of [Puerto Rico's Professional Ethics Code] establishes that the fiduciary nature of the attorney-client demands that it be founded in absolute honesty, and it further specifies that any money or other property of the client that comes into the attorney's possession shall be accounted for and that he shall not commingle it with his own property or allows it to be commingled." In re Roldan Figueroa, 106 P.R.R. 4, 11 (1977). "An attorney is not exempt from the appropriate disciplinary sanction just because he returned the funds withheld or because he withheld such funds with no intention of keeping them permanently. A delay in returning funds is *per se* sufficient cause for taking disciplinary measures against an attorney." In re Vazquez O'Neill, 21 P.R.R. 619, 624-625 (1988). "The practice by lawyers of withholding client funds is highly injurious to the legal profession. Such conduct taints the relationship of honesty and trust that should exist between a lawyer and his client; it affects both the image of dignity and integrity that every lawyer should maintain and project as well as the reputation of the legal profession in the community. The faith and the confidence of the public are essential in order that the lawyer may properly fulfill the duties which he owes society." Id. at 624.

14

Following the doctrine established by Puerto Rico's Supreme Court, if merely withholding a client's funds violates Canon 23 of the Puerto Rico Code of Ethics, turning them over to a third party who is not the client –in this case the Debtors– is more detrimental and clearly constitutes a violation of Canon 23.

The cases cited by the US Trustee for the proposition that Attorney De Jesus violated the Puerto Rico Professional Ethics Code are illustrative of an attorney's ethical duties in cases like this one. The US Trustee cites the two cases filed against attorney Oliveras Lopez de Victoria: one before the Supreme Court of Puerto Rico (the "PR Supreme Court"), 173 D.P.R. 5 (2008) and the other before the United States District Court for the District of Puerto Rico ("PR District Court"), subsequently affirmed by the First Circuit at 561 F.3d 1 (1st Cir. 2009). The facts in both forums are the same: attorney Oliveras Lopez de Victoria filed a motion in a lawsuit before the PR Court of First Instance to withdraw consigned funds for a client without mentioning his knowledge that his client had passed away, which was a material fact. Oliveras Lopez de Victoria attempted to have the PR Court of First Instance issue two checks: one in favor of his deceased client and another to himself. He did not file a motion for substitution of parties. The PR Supreme Court found that he had tried to mislead the lower court and that his motivation in doing so was to collect his attorney's fees. 173 D.P.R. at 13. Oliveras Lopez de Victoria ultimately informed to the PR Court of First Instance of the death of his client and that there was a minor involved. Confronted by the judge with his misstatements, attorney Oliveras Lopez de Victoria did not deny making them but rather attempted to excuse them alleging he suffered from a medical condition. Id. at 14. The PR Supreme Court suspended Oliveras Lopez de Victoria indefinitely from the practice of law for violations to Canons 35 & 38 of the Puerto Rico's Professional Ethics Code. Id. at 15. The District Court also suspended him indefinitely under its reciprocal discipline procedures until the PR Supreme Court reinstated him to the practice of law or otherwise modified the indefinite suspension. 561 F.3d at 2. The First Circuit affirmed the District Court. Id. at 4. The main similarity between those two cases and the instant one is that both attorneys filed *Funds Withdrawal Motions* without previously filing motions for substitution of parties pursuant to Puerto Rico's Rule 22 of Civil Procedure, 32 L.P.R.A. Ap. V

R. 22 (2009)[2]. The implicated Canons in those two cases and the instant one are different as in the case at bar the totality of the record shows that Attorney De Jesus has not lied to the court and, contrary to the US Trustee's contention[3], has admitted his own fault when confronted with it. Another significant difference between these cases and the instant one lies in PR Supreme Court's consideration that attorney Olivera Lopez de Victoria did not inform the PR Court of First Instance of his client's demise through a motion for substitution of parties under Puerto Rico's Rule 22.1 of Civil Procedure, which is mandatory for an attorney. 173 D.P.R. at 12-13. In the instant case, Puerto Rico's Rule 22.3 of Civil Procedure provides that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." 32 L.P.R.A. Ap. V R. 22.3, identical to prior Rule 22.3, 32 L.P.R.A. Ap. III R. 22.3. Substitution of parties when a transfer of interest occurs is not mandatory but optional. Mun. de San Juan v. Bosque Real S.E., 158 D.P.R. 743, 759 (2003). This court declines to apply the PR Supreme Court's reasoning in that sense to Attorney De Jesus. Notwithstanding, this court emphasizes that the best practice for attorneys who are authorized to represent bankruptcy estate before Puerto Rico Courts under 11 U.S.C. § 327 is to immediately disclose to the court and the parties that they represent the bankruptcy estate of the debtors and not the debtors themselves. Trustees, as representatives of the estate, should observe such compliance.

The US Trustee also cites In re Alvarez Aponte, 158 D.P.R. 140 (2002), for the proposition that Attorney De Jesus breached his fiduciary duties to the bankruptcy estate. In Alvarez Aponte, the PR Supreme Court suspended attorney Alvarez Aponte from the practice of law for violations of Canons 19 and 23 of Puerto Rico's Professional Responsibility Code, 4 L.P.R.A. Ap. IX Cs. 19 & 23. Attorney Alvarez Aponte's client alleged that she retained him to file a collection of monies

---

[2] Pursuant to Puerto Rico's Rule 22 of Civil Procedure, 32 L.P.R.A. Ap. V R. 22 (2009), identical to previous Rule 22, 32 L.P.R.A. Ap. III R. 22 (1979), requires that in case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

[3] The US Trustee alleges that Attorney "De Jesus has continuously denied any wrongdoing in his actions" (Docket No. 174, p. 3).

16

action on her behalf but that he did not notify her of the status of her case except that he had successfully reached a settlement. Attorney Alvarez Aponte deposited the judgment check in the amount of $3,000 issued to his client in his personal checking account. Id. at 148. Alvarez Aponte did not inform his client of the existence of that judgment check and instead went on vacations after receiving the check. Id. at 148. Upon his return, instead of delivering to his client the total amount of $3,000, Attorney Alvarez Aponte only gave her $2,000 and retained the remaining $1,000 for himself as his attorney's fees. Id. at 148. The PR Supreme Court concluded that Alvarez Aponte should not have, without the authorization of his client, endorsed and deposited the judgment check in his personal account nor should he have automatically deduced his attorney's fees by retaining the $1,000. Id. at 748. The PR Supreme Court further reasoned that the mere retention of the judgment check and its subsequent delay in turning the funds over to his client warranted a disciplinary action under Canons 19 and 23 of Puerto Rico's Professional Responsibility Code. Id. at 147. Attorney De Jesus did not retain the *Judgment Check* for himself nor deposited its funds in his personal account. His actions were far more detrimental to his client, the Chapter 7 Trustee as representative of the estate. Attorney De Jesus gave the entire amount of the *Judgment Check* to a third party.

The last case that the US Trustee cites for ethical purposes is Cuevas-Segarra, *et al.* v. Contreras, 134 F.3d 458 (1st Cir. 1998). In Cuevas-Segarra, the debtors' bankruptcy estate had few assets and one of the most significant ones was a malpractice claim before the PR Court of First Instance. The debtors' attorneys, Attorneys Cuevas-Segarra and Martinez-Sanchez, filed a motion for employment seeking the Bankruptcy Court's approval to settle the malpractice suit on behalf of the debtors. The motion was denied because of noncompliance with Fed. R. Bankr. P. 2014. Instead of amending the application to comply with the Rule, Attorneys Cuevas-Segarra and Martinez-Sanchez settled the case without the Bankruptcy Court's approval and without authorization by the Court for them to represent the bankruptcy estate, and, notwithstanding, proceeded to divide the settlement funds between themselves (in payment of their attorney's fees) and the debtors. The Chapter 7 Trustee subsequently filed a complaint alleging that Attorneys Cuevas-Segarra and Martinez-Sanchez were improperly in possession of property belonging to the debtors' estate and seeking the turnover of their fees to the bankruptcy estate. The Bankruptcy Court granted the Chapter

17

7 Trustee's complaint ordering both attorneys to return their fees to the estate. The PR District Court and the First Circuit affirmed the decision. In the instant case, however, Attorney De Jesus had obtained this court's permission to represent the bankruptcy estate (Docket No. 90). However, his main duty was to turnover any and all funds he obtained from the State Court Case to his client, not to the Debtors.

*(F)      Equitable Considerations*

The court concludes that Attorney De Jesus breached his fiduciary duties with the bankruptcy estate when he filed the *Funds Withdrawal Motion* (Docket No. 222-1, pp. 1-2) without the Chapter 7 Trustee's knowledge or consent, when he requested the PR Court of First Instance to issue the *Judgment Check* to the Debtors and to himself, when he endorsed it, and when he gave it directly to the Debtors without a word to the Chapter 7 Trustee. His actions undisputably contravene Canons 19 and 23 of Puerto Rico's Code of Professional Ethics. His alleged lack of scienter and bankruptcy knowledge (Docket No. 230) do not excuse his basic duties under Puerto Rico's Code of Professional Ethics, even if no harm to the bankruptcy estate was done, which in this case did. See Woods v. City National Bank & Trust Co., 312 U.S. at 268. A person may not escape the consequences of acting in violation of the Bankruptcy Code by pleading ignorance. See Houghton v. Marcella (In re Marcella), 2009 Bankr. LEXIS 3380 at *52, 2009 WL 3348251 at *16 (Bankr. D.Ma. 2009).

Attorney De Jesus' plea to invoke this court's equitable powers is outweighed by these serious ethical provisions, for it is well settled that a bankruptcy court's equitable powers are not boundless, and they cannot be exercised in direct contravention of provisions of the Bankruptcy Code. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (explaining that "equitable powers ... in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); HSBC Bank USA v. Branch (In re Bank of New Engl. Corp.), 364 F.3d 355, 362 (1st Cir. 2003) ("equitable powers possessed by bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code")[4]; In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2nd Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable

---

[4] Citing Norwest Bank Worthington v. Ahlers, 485 U.S. at 206.

principles to achieve fairness and justice in the reorganization process.... We have repeatedly emphasized the importance of the bankruptcy court's equitable power." But "[t]his power is not unlimited. Thus, a bankruptcy court may not exercise this power in contravention of provisions of the [Bankruptcy] Code."); Tese-Milner v. Moon (In re Moon), 385 B.R. 541, 551 (Bankr. S.D.N.Y. 2008) (while "bankruptcy courts are courts of equity, they are nevertheless courts of law. It is well settled that a bankruptcy court's equitable powers are not boundless, and that they cannot be exercised in direct contravention of provisions of the Code."); Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶ 105.01[2] at 105-6 (16th ed. 2012) ("[I]t should be universally recognized that the [equitable] power granted to the bankruptcy courts under Section 105 is not boundless and should not be employed as a panacea for all ills confronted in the bankruptcy case.") Attorney De Jesus' own actions have placed him in direct conflict with the bankruptcy estate in light of Canons 19 and 23 of Puerto Rico's Code of Professional Ethics. His actions constitute a breach of his fiduciary duties and a material adverse interest against the estate, which is sufficient cause to deny his *Application for Compensation* under Section 328 of the Bankruptcy Code.

*(E)      11 U.S.C. § 328*

Section 328 of the Bankruptcy Code provides limitations on the compensation of professional persons employed under Section 327. 11 U.S.C. §§ 327, 328. Pursuant to Section 327, the trustee may employ a professional person who does not hold an adverse interest to represent the estate. However, the court may deny compensation of such professional if at any time during such professional person's employment, the person holds an adverse interest to the estate. 11 U.S.C. § 328(c). Having obtained a judgment in favor of the estate, but disposing of the money in favor of the third party, without informing his client, the Chapter 7 Trustee in representation of the estate, creates *ipso facto* an adverse interest to the estate. Attorney De Jesus' actions directly lessened the value of the estate. See Rome v. Braunstein, 19 F.3d at 58. Therefore, there is cause to deny compensation pursuant to Section 328(c).

Conclusion

For the reasons stated herein, the US Trustee's *Objection* and *Motion for Summary Judgment* (Docket Nos. 174 & 215) are hereby granted and Attorney De Jesus' *Application for Compensation*

(Docket No. 167) is hereby denied. The court does not consider at this time any action which Attorney De Jesus may have against the Debtors.

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 9th day of August 2012.

SO ORDERED.

Enrique S. Lamoutte
United States Bankruptcy Judge